# In the United States Court of Federal Claims

No. 18-1082L

(Filed: April 5, 2019)

*************************************  *
                                      *
BUDDY and DONNA TAYLOR,               *
                                      *
                                      *   Fifth   Amendment   Taking;   Physical
                        Plaintiffs,   *   Taking; Regulatory Taking; Ripeness;
                                      *   Motion to Dismiss for Failure to State a
v.                                    *   Claim; Rule 12(b)(6); Motion to Dismiss
                                      *   for Lack of Subject Matter Jurisdiction;
THE UNITED STATES,                    *   Rule 12(b)(1).
                                      *
                        Defendant.    *
                                      *
*************************************  *

*A. Blair Dunn*, Western Agriculture Resource and Business Advocates, Albuquerque, New Mexico, for Plaintiffs.

*Nathanael B. Yale*, Trial Attorney, with whom were *Joseph P. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Michael L. Casillo*, Litigation Attorney, Air Force Legal Operations Agency, Environmental Law and Litigation Division, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

Plaintiffs Buddy and Donna Taylor ("the Taylors") bring this action against the United States after the United States Air Force ("USAF") allegedly flew training missions within the Taylors' airspace and improperly interfered with a lease contract between the Taylors and Wind Energy Prototypes LLC ("Wind Energy"). In their complaint, the Taylors claim that the USAF's actions amounted to both a physical and regulatory taking of their property under the Fifth Amendment. Currently before the Court is Defendant's motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction, pursuant to

Rule 12(b)(1), and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).  For the reasons explained below, the Court GRANTS Defendant's motion to dismiss.

Background

## A. USAF's Overflights

The Taylors own and operate a 6,395-acre cattle ranch in New Mexico.  The parcel is situated near Cannon Air Force Base as well as "near the landing and drop zones" in Melrose Air Force Range.[1]  The Taylors allege that following the purchase of their ranch in 1999, the USAF began flying training missions, during which planes flew approximately 20-500 feet above the Taylors' land in violation of their property interest.  The Taylors allege that this behavior continues to the present time.  According to the Taylors, the USAF flies these violative routes "regularly."  Notwithstanding the USAF's alleged interference, the Taylors continue to perform their cattle ranching operations seemingly without interruption.

## B. The Wind Energy Lease

In October 2008, the Taylors reached an agreement with Wind Energy for the development of a wind energy farm on the Taylors' property (the "Green Wing Project").  Under this agreement, the Taylors gave Wind Energy the exclusive option for an easement over their property for purposes of "wind resource evaluation, wind energy development, energy transmission and related wind energy development uses."  Compl. ¶ 14.  The agreement specified that Wind Energy had the option to cancel the agreement at any time within a five-year period upon issuing proper notice to the Taylors.  In exchange, the Taylors received an option term fee of $3.00 per acre per year with the potential for additional royalties.

As part of Project Green Wing, Wind Energy would have to build turbines exceeding 200 feet tall.  However, before a landowner can begin construction on structures of this height, they must first alert the Federal Aviation Administration ("FAA").

### 1. FAA Notice and Hazard Determinations

The FAA is authorized to issue rules and regulations concerning air traffic.  See 49 U.S.C. § 40103.  Pursuant to that authority, persons contemplating construction or alteration of structures that may present an obstacle to air traffic must first file a Notice of Proposed Construction or Alteration ("notice") with the FAA.  See 49 U.S.C. § 44718; 14 C.F.R. §§ 77.5, 77.9, 77.13.  A building may present an obstacle, triggering the need for a

---

[1] The Melrose Air Force Range is a military air and ground training range used by Cannon Air Force Base.

notice, when the proposed structure exceeds 200 feet above ground level.  See 14 C.F.R. § 77.9 (listing other obstacle-creating conditions not relevant to the situation at hand).

Upon submission of a notice, the FAA makes an initial determination of whether the project "may result in an obstruction of the navigable airspace, an interference with air navigation facilities and equipment or the navigable airspace, or, after consultation with the Secretary of Defense, an adverse impact on military operations and readiness."  § 44718(b)(1).  The FAA then conducts "an aeronautical study to determine the extent of any adverse impact on the safe and efficient use of the airspace, facilities, or equipment."  Id. Upon conclusion of its review, the FAA issues a final determination on whether the project presents a "hazard to air navigation."  § 44718(b)(3); see also 14 C.F.R. § 77.31.  Although those seeking to construct a potentially obstacle-creating structure must submit a notice, the FAA has no authority to prevent construction of structures that it deems to be hazardous.  See Flowers Mill Assoc. v. United States, 23 Ct. Cl. 182, 189-90 (1991) (noting the advisory nature of FAA hazard determinations).

### 2. Wind Energy Opts Out of the Agreement

Wind Energy exercised its early termination option in September 2012 thereby canceling its arrangement with the Taylors.  The Taylors allege that the Government brought about this cancellation.  Specifically, the Taylors assert that in or around the summer or early fall of 2012, "agents and/or employees of Defendant with the Cannon Air Force Base directly intervened" with the contractual arrangement between the Taylors and Wind Energy by suggesting to Wind Energy that the FAA would not issue a "No Hazard" determination for the Green Wing Project.  The Taylors maintain that the FAA's informal indication that a "No Hazard" determination was not forthcoming caused Wind Energy to withdraw from the agreement.

Neither the Taylors nor Wind Energy has submitted a notice to the FAA, and the FAA has not issued any official hazard determination pursuant to the above-outlined process.  Nevertheless, the Taylors explain that the FAA's suggestion was "fatal" to the construction of wind turbines on their property and thus the Green Wing Project.  They assert that the absence of a "No Hazard" determination severely impacts a developer's ability to secure necessary permits from other agencies and to find financing.

### Procedural History

On July 25, 2018, the Taylors filed their complaint in this Court alleging (1) that the USAF's overflights constitute a physical taking, and (2) the Government engaged in a regulatory taking when it interfered with the Taylors' lease with Wind Energy.  Lastly, the Taylors maintain that they are entitled to declaratory judgments regarding their exclusive rights to use their land and the Government's interference with those rights.

Defendant filed its motion to dismiss on October 30, 2018.  Plaintiff filed its response on January 11, 2019, and Defendant replied on February 19, 2019.  The Court heard oral argument on March 19, 2019.

## Discussion

A. <u>Plaintiffs' Regulatory Takings Claim Lacks Subject Matter Jurisdiction.</u>

1. <u>Standard of Review</u>

The United States Court of Federal Claims is a court of limited jurisdiction.  28 U.S.C. § 1491(a)(1); <u>Brown v. United States</u>, 105 F.3d 621, 623 (Fed. Cir. 1997).  The Tucker Act confers jurisdiction on this Court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).

When deciding a Rule 12(b)(1) motion to dismiss, the Court must assume all the undisputed facts in the complaint are true and draw reasonable inferences in the non-movant's favor.  <u>Erikson v. Pardus</u>, 551 U.S. 89, 94 (2007).  However, a plaintiff must establish that jurisdiction exists "by a preponderance of the evidence."  <u>M. Maropakis Carpentry, Inc. v. United States</u>, 609 F.3d 1323, 1327 (Fed. Cir. 2010).  In determining whether a plaintiff has met this burden, the Court may look "beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists." <u>Lechliter v. United States</u>, 70 Fed. Cl. 536, 543 (2006) (quoting <u>Rocovich v. United States</u>, 933 F.2d 991, 993 (Fed. Cir. 1991)).  If the Court finds that it lacks subject matter jurisdiction, it must dismiss the claim.  RCFC 12(h)(3); <u>Gluck v. United States</u>, 84 Fed. Cl. 609, 614 (2008).

2. <u>Plaintiffs' Regulatory Takings Claim Sounds in Tort and Not in Takings.</u>

The Government contends that the Taylors' regulatory takings claim premised on the Government's indication that it would not issue a "No Hazard" determination is more appropriately characterized as a claim for tortious interference with contract.  This difference is not merely semantic: this Court has jurisdiction over claims founded upon the Fifth Amendment, but it lacks jurisdiction over those claims sounding in tort.  <u>See</u> 28 U.S.C. § 1491(a)(1).

The Taylors' characterization of their own claim is irrelevant.  Rather, the Court must "look to the true nature of the action" to determine whether jurisdiction exists.  <u>120 Delaware Ave. LLC v. United States</u>, 95 Fed. Cl. 627, 630 (2010) (citations omitted).  "At this juncture, the court is not deciding whether a taking occurred, but rather is deciding

whether plaintiffs have sufficiently alleged a taking rather than a tort claim such that this court has jurisdiction to proceed to the merits." Warren Trust v. United States, 107 Fed. Cl. 533, 558 (2012).

The Fifth Amendment to the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. A takings claim is evaluated under a two-part analysis. "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'" Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 854 (Fed. Cir. 2009) (citations omitted). Accordingly, to establish jurisdiction in this Court, the Taylors must only plead sufficient facts that, when accepted as true, show that they had a property interest in their contract with Wind Energy, and that the Government took that interest when it indicated that a "No Hazard" determination would not be issued.

The Constitution "neither creates nor defines the scope of property interests compensable under the Fifth Amendment." Maritrans, Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Instead, courts look to "'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law" to define the requisite property interest to establish a taking. Id. (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1030 (1992)). This broad standard for identifying Fifth Amendment property interests has been held to include intangible rights like contracts. See Lynch v. United States, 292 U.S. 571, 579 (1954); Cienega Gardens v. United States, 331 F.3d 1319, 1329 (Fed. Cir. 2003) (recognizing "ample precedent for acknowledging a property interest in contract rights under the Fifth Amendment").

As to the second factor, the Government "does not 'take' contract rights pertaining to a contract between two private parties simply by engaging in lawful action that affects the value of one of the parties' contract rights." Id. To establish that the Government took private contract rights, a plaintiff must demonstrate that the Government "put itself in the shoes" of one of the parties and assumed "all the rights and advantages" of that party. Id. at 1365-66 (quoting Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 120 (1924)); see also Omnia Commercial Co., Inc. v. United States, 261 U.S. 502, 510-11 (1923). It is insufficient for the plaintiff to merely allege that the Government frustrated the rights of a party or took the subject matter of the contract that made performance impossible. See Omnia, 261 U.S. at 511. But that is precisely what the Taylors do in their complaint.

The Taylors premise their regulatory takings claim on the allegation that the Government held "private discussions with [Wind Energy]" during which Government agents "communicat[ed] [their] desire to prevent wind turbines in the designated air space" and "suggest[ed] that 'No Hazard' [determinations] would not be issued." Compl. ¶¶ 19-

20; 32-38.  These conversations ultimately had the effect of "interfer[ing] with the contract between Plaintiffs and Wind Energy" and caused Wind Energy to withdraw from the agreement with the Taylors.  Compl. ¶ 34-35.  Lastly, the complaint mentions that the Government took this action with "no justification."  Compl. ¶ 36.

While the Taylors' contract with Wind Energy is a cognizable Fifth Amendment property interest, these facts do not show that the Government replaced itself with one of the original contracting parties so that it took the contract.  Rather, the Taylors' allegations are consistent with a claim that the Government improperly interfered with their contract and that Wind Energy canceled the agreement because of this improper interference.  Comparing the similarities between the Taylors' allegations with the factors for a tortious interference with contract cause of action confirms that Plaintiffs' claim, as alleged in their complaint, sounds in tort and not in takings.

Curiously, Plaintiffs' complaint lays out the elements of a tortious interference with contract claim under New Mexico law even though they are alleging a taking.  Those factors, as set out in the complaint, are: "(1) defendant has knowledge of the [contract] between the parties; (2) performance of the contract was refused; the plaintiff was unable to fulfill the contract's obligations[;] (3) the defendant played an active and substantial part in causing the plaintiff to lose the benefits of the contract[;] (4) damages flowed from the breach of contract; and (5) the defendant induced the breach without justification or privilege to do so."  Compl. ¶ 32 (citing Clockman v. Marburger, No. 35,690, 2017 WL 1018819, at *2 (N.M. Ct. App. Feb 15, 2017)).  The Taylors' allegations are much more consistent with a tort than a takings claim.  And since the Taylors' claim for a regulatory taking of its contract with Wind Energy is truly a cause of action for tortious interference with their contract, this Court is without jurisdiction to hear this claim.

### 3.  Plaintiff's Claim is Not Ripe for Review.

Entertaining Plaintiffs' arguments that their regulatory takings claim does not sound in tort and that they have properly alleged a takings cause of action, the Taylors' claim still fails because it is not yet ripe.  Courts are "without jurisdiction to consider takings claims that are not ripe."  Martin v. United States, 894 F.3d 1356, 1360-61 (Fed. Cir. 2018).  Unripe claims must be dismissed accordingly.  See, e.g., Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-87 (1985).

As-applied regulatory takings claims ripen "once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty."  See Palazzolo v. Rhode Island, 533 U.S. 606, 620 (2001).  Such regulatory action is typically not ready for judicial review until the agency has issued a final decision.  Id. at 618 ("[A] takings claim challenging the application of land-use regulations is not ripe until "the government entity charged with

implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.").

Neither Wind Energy nor the Taylors filed a notice with the FAA regarding their proposed Green Wing Project or turbine construction to trigger the FAA's review. See 49 U.S.C. § 44718; 14 C.F.R. §§ 77.5, 77.9, 77.13. The FAA, therefore, has not issued a preliminary indication of whether an obstacle may result from turbine construction, conducted an aeronautical study or issued a final hazard determination. Rather, the Taylors base their claim on the Government's informal indication that the FAA would not issue a "No Hazard" determination. This is not a final agency decision regarding the application of the regulations to the Taylors' property that is ripe for judicial review.

The Taylors contend that they are excused from taking this final step since the FAA's position is already clear and further review would prove futile, but this exception is limited. Morris v. United States, 392 F.3d 1372, 1376 (Fed. Cir. 2004) (outlining that this exception serves as a means for avoiding multiple subsequent applications after it is clear from one final judgment that no project will be approved). Indeed, the futility exception is inapplicable, and a final agency decision is necessary, even when it is highly likely that the Government's position would be adverse to the party's interests. See Barlow & Haun, Inc. v. United States, 805 F.3d 1049, 1059 (Fed. Cir. 2015) (determining that permit application was not futile and still required despite there not being a high likelihood for approval); Williamson, 473 U.S. at 186 (disapproval of plaintiff's preliminary plat proposal was not a final decision that no variances would be granted). Accordingly, the FAA's purported informal indication of its position is not a sufficiently clear decision to trigger this exception. This Court cannot review the Taylors' claim because it is not yet ripe.

B. Plaintiffs Fail to State a Claim for Either a Regulatory Taking or a Physical Taking.

1. Standard of Review

When considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court must accept as true all factual allegations submitted by the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations are entitled to the assumption of truth, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Id.

Accordingly, for the plaintiff to survive dismissal, the Court must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plaintiff's factual allegations must be substantial enough to raise the right to relief above the speculative level, accepting all

factual allegations in the complaint as true and indulging all reasonable inferences in favor of the non-movant.  Twombly, 550 U.S. at 545; Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2008).

2.  Regulatory Taking

a.  Failure to Issue a "No Hazard" Determination Cannot Form the Basis for a Regulatory Taking as a Matter of Law.

"[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."  Penn. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922).  In analyzing whether Government regulation amounts to a taking, courts conduct a fact-based inquiry, which considers: (1) the character of the governmental action; (2) the economic impact of the action on the claimant; and (3) the effects of the governmental action on the reasonable investment-backed expectations of the claimants.  See Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 124 (1978); see also Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 538–39 (2005).

While the FAA's hazard determination may present "a considerable stumbling block" for the Taylors' ability to find financing for their project, the fact remains that the FAA's opinions are strictly advisory in nature.  Flowers Mill, 23 Ct. Cl. at 187, 189.  These determinations are "not legally enforceable"; The FAA has no authority to prohibit construction on a project that it deems to be hazard-creating.  Id. at 186, 188-89; see also Breneman v. United States, 57 Fed. Cl. 571, 585 (2003).  The FAA does not take property when it issues a hazard determination.  Accordingly, the Government did not take the Taylors' property rights when it indicated to Wind Energy that a "No Hazard" determination was not forthcoming.  Withholding a "No Hazard" determination cannot constitute a taking as a matter of law, and, as a result, the Taylors fail to state a regulatory takings claim premised on this theory.

b.  Plaintiffs Have Not Alleged Essential Elements of a Regulatory Takings Claim.

Even assuming the Taylors can base their regulatory takings claim on the Government's hazard determination, they have failed to allege facts sufficient to support their claim.  As stated above, the Taylors' contract with Wind Energy is a cognizable Fifth Amendment property interest, but the Taylors have not sufficiently alleged that this right was taken.

Plaintiffs assert that the Government took the contract between themselves and Wind Energy after Department of Defense "agents and/or employees" suggested to Wind Energy that the FAA would not issue a "No Hazard" determination on the proposed wind

turbine construction project on the Taylors' property.  Compl. ¶ 19.  Thereafter, Wind Energy canceled the agreement.  Compl. ¶ 20.

These facts do not show that the Government "put itself in the shoes" of one of the original contracting parties and assumed "all the rights and advantages" of that party. Brooks-Scanlon Corp., 265 U.S. at 120.  Again, at most, these allegations state a claim that the Government interfered with the Taylors' contract with Wind Energy which, as a matter of law, is insufficient to demonstrate a taking of the Taylors' contractual rights.  Palmyra Pacific Seafoods, LLC v. United States, 651 F.3d 1361, 1365 (Fed. Cir. 2009), cert. denied, 599 U.S. 1106 (2010); Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1381 (Fed. Cir. 2008) (holding that Government action having the effect of frustrating plaintiff's "business expectations . . . does not form the basis of a cognizable takings claim."). Accordingly, the Taylors have failed to state a regulatory takings claim.

### 3.  Plaintiffs Have Not Stated a Claim for a Physical Taking.

Typically, the Government's physical occupation of private property is a *per se* taking.  See Hendler v. United States, 952 F.2d 1364, 1375 (Fed. Cir. 1991).  However, physical taking by aircraft overflights, referred to as a taking by avigation easement, are subject to a heightened pleading standard.  To state a claim, a plaintiff must show: (1) planes flew directly over the plaintiff's land; (2) flights were frequent and at a low altitude; and (3) flights directly and immediately interfered with the plaintiff's enjoyment and use of the land.  See United States v. Causby, 328 U.S. 256, 266 (1946); Brown v. United States, 73 F.3d 1100, 1102 (Fed. Cir. 1996); Andrews v. United States, 108 Fed. Cl. 150 (2012).

The Taylors do not allege that the flights were frequent enough to state a claim for an avigation easement.  Plaintiffs assert that "military aircraft[s] regularly fly training routes" across their property.  Compl. ¶ 22.  The legal standard requires overflights to be frequent; "regularly" is simply a restatement of "frequently."  See "Frequently", MIRIAM-WEBSTER, https://www.merriam-webster.com/thesaurus/frequently.  Though detailed factual allegations are not necessary, the Taylors have simply parroted back the legal standard and offered the legal conclusion that the overflights were frequent.  This will not do.  Because Plaintiffs' complaint offers "no more than conclusions," their assertions "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  The Taylors have, therefore, failed to state a claim for a physical taking.

### 4.  Plaintiffs Are Not Entitled to Declaratory Relief.

The Taylors ask the Court to declare that (1) they "have the exclusive use and rights to the air space over their property up to 500 feet [above the ground]" and (2) [the Government's] physical occupation of this airspace constitutes a taking of property requiring just compensation."  Compl. ¶ A-B.

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides this Court with jurisdiction to hear claims predicated on the Constitution, a federal statute or regulation, or a contract with the Government.   However, this Court does not have the general authority to issue declaratory judgments and may only award such equitable relief under certain circumstances.   See Halim v. United States, 106 Fed. Cl. 677, 684-85 (2012).   The Taylors fail to assert that their claims fall into any of the limited exceptions where such equitable relief is appropriate.   As such, the Court lacks jurisdiction to entertain these requests.

<u>Conclusion</u>

Based upon the foregoing, the Court GRANTS the Government's Motion to Dismiss as to all Plaintiffs' claims.   The Clerk shall enter judgment in favor of the Government.   No costs.   Plaintiffs Buddy and Donna Taylor's complaint is dismissed without prejudice.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge